2014 ND 152

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**Joseph SMITH, Defendant
and Appellant.**

No. 20130398.

Supreme Court of North Dakota.

July 17, 2014.

Christine H. McAllister, Burleigh County Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Danny L. Herbel, The Regency Business Center, Bismarck, ND, for defendant and appellant.

McEVERS, Justice.

[¶ 1] Joseph Smith appeals from a district court criminal judgment and conviction entered on a conditional plea of guilty for driving under the influence of an intoxicating liquor ("DUI"), in violation of N.D.C.C. § 39–08–01, a class B misdemeanor. Smith argues the district court erred in denying his motion to suppress evidence that he claims was obtained in violation of *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), and his constitutional rights under the Fourth Amendment to the United States Constitution, and Article I, Section

8 of the North Dakota Constitution. Smith consented to take the chemical breath test given by the law enforcement officer, therefore, Smith's constitutional rights were not violated as a matter of law by North Dakota's implied consent law. We affirm, concluding the district court did not err in denying Smith's motion to suppress.

## I

[¶ 2] On July 21, 2013, a Burleigh County deputy arrested Smith for DUI. Prior to arrest, the deputy observed Smith swerve. Smith subsequently parked his car in a parking lot and the deputy approached Smith. Smith admitted to having too much to drink. Smith indicated he had consumed ten drinks prior to driving but believed he was still able to drive. Smith consented to taking field sobriety tests but admitted he would not pass. Smith passed the one legged stand test but failed the horizontal gaze nystagmus and walk and turn tests. The deputy provided Smith with the North Dakota implied consent law advisory, stating:

> As a condition of operating a motor vehicle on a highway or a public or private area to which the public has a right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs. I must inform you that: (a) North Dakota law requires you to take a breath screening test to determine if you are under the influence of alcohol; (b) North Dakota law requires you to submit to a chemical test to determine whether you are under the influence of alcohol or drugs. Refusal to take this test as directed by a law enforcement officer is a crime punishable in the same manner as DUI and includes being arrested. I must also inform you that refusal to take the test as requested by a law enforcement officer may result in a revocation of your driver's license for up to a mini-

mum of one hundred and eighty days and potentially up to three years. Do you understand these consequences?

Smith indicated he understood the consequences and consented to the preliminary breath test. Smith's preliminary breath test result was 0.156 percent alcohol concentration, and he was placed under arrest. The deputy read Smith his Miranda rights and, for the second time, provided Smith with the North Dakota implied consent law advisory. Again, Smith indicated he understood the consequences and consented to the Intoxilyzer 8000 test. Smith was transported to the Burleigh County Detention Center, where an Intoxilyzer 8000 test was administered. Smith's Intoxilyzer 8000 test result was 0.152 percent alcohol concentration.

[¶ 3] In October 2013, Smith moved to suppress evidence, seeking suppression of the Intoxilyzer 8000 test results. Smith claimed the Intoxilyzer 8000 test result was obtained without a warrant and without an exception to the warrant requirement, in violation of U.S. Const. amend. IV and N.D. Const. art. I, § 8. The State opposed the motion to suppress, and Smith replied. In November 2013, the district court denied Smith's motion to suppress. In December 2013, the district court accepted Smith's conditional plea of guilty for DUI, and Smith appealed.

## II

[¶ 4] The applicable standard of review of a district court's decision to grant or deny a motion to suppress evidence is well established.

> "When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We affirm the district court's decision unless we conclude there is insufficient competent evidence to

support the decision, or unless the decision goes against the manifest weight of the evidence."

*State v. Zink*, 2010 ND 230, ¶ 5, 791 N.W.2d 161 (quoting *State v. Mohl*, 2010 ND 120, ¶ 5, 784 N.W.2d 128). "Whether a finding of fact meets a legal standard is a question of law," which is fully reviewable on appeal. *State v. Mitzel*, 2004 ND 157, ¶ 10, 685 N.W.2d 120. "The existence of consent is a question of fact to be determined from the totality of the circumstances." *Id.* at ¶ 13. Whether consent is voluntary is generally decided from the totality of the circumstances. *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 14, 848 N.W.2d 659. "Our standard of review for a claimed violation of a constitutional right is de novo." *Id.* at ¶ 8.

### III

[¶ 5] Smith argues the district court erred in denying his motion to suppress evidence. According to Smith, he did not voluntarily consent to the Intoxilyzer 8000 test and, therefore, the warrantless test was performed without any exception to the warrant requirement. Smith, therefore, contends the district court's judgment is contrary to the United States Supreme Court's decision in *McNeely*, 133 S.Ct. 1552, and violated his constitutional rights under U.S. Const. amend. IV and N.D. Const. art. I, § 8.

[¶ 6] This Court's "review is limited to issues raised before the district court." *Zink*, 2010 ND 230, ¶ 6, 791 N.W.2d 161. In his motion to suppress, Smith claims his submission to the Intoxilyzer 8000 test was the product of coercion and, therefore, not voluntary. Smith claims the coercion occurred when the deputy advised him that the implied consent law makes refusal to take a breath screening or chemical test a crime that may result in a revocation of his driving privileges. Smith concedes that the sole issue on appeal is "whether the State met its burden of proving that, under the totality of circumstances, Smith voluntarily consented to the warrantless Intoxilyzer breath test." Therefore, we limit our review of the district court's denial of Smith's motion to suppress to whether Smith's consent to the Intoxilyzer 8000 test was voluntary.

[¶ 7] In *McCoy*, this Court recently explained:

Unreasonable searches and seizures are prohibited under U.S. Const. amend. IV and N.D. Const. art. I, § 8. It is well-settled that administration of a breath test to determine alcohol consumption is a search. Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement. Consent is one exception to the warrant requirement. To be effective, consent must be voluntarily given under the totality of the circumstances and must not be coerced by explicit or implicit means or by implied threat or covert force.

2014 ND 119, ¶ 10, 848 N.W.2d 659 (citations omitted) (quotation marks omitted). "It is the State's burden to show that a warrantless search falls within an exception to the warrant requirement." *Mitzel*, 2004 ND 157, ¶ 12, 685 N.W.2d 120.

[¶ 8] Driving is a privilege, not a constitutional right and, therefore, subject to reasonable control of the State under its police power. *McCoy*, 2014 ND 119, ¶ 26, 848 N.W.2d 659 (citing *State v. Stuart*, 544 N.W.2d 158, 163 (N.D.1996); *N.D. Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 598 (N.D.1992); *State v. Mische*, 448 N.W.2d 412, 413 (N.D.1989); *State v. Larson*, 419 N.W.2d 897, 898 (N.D.1988); *State v. Kouba*, 319 N.W.2d 161, 163 (N.D.1982)). North Dakota, like other states, has continued to increase penalties and enact tougher laws in response to the carnage on

our nation's highways. *McCoy,* 2014 ND 119, ¶ 26, 848 N.W.2d 659.

[¶ 9] North Dakota's implied consent law provides:

Any individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, or urine for the purpose of determining the alcohol concentration . . . in the individual's blood, breath, or urine.

N.D.C.C. § 39–20–01(1). During the 2013 legislative session, the North Dakota Legislative Assembly increased the penalties in regard to DUI, making refusal to take a test a crime. Section 39–20–01(3), N.D.C.C., provides that law enforcement officers:

[S]hall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol . . .; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.

There has been no change, however in a person's statutory right to refuse to take the test. "If a person refuses to submit to testing under section 39–20–01 . . . none may be given. . . ." N.D.C.C. § 39–20–04. The North Dakota Legislative Assembly created a statutory right to refuse, but that refusal comes with consequences. "[A] driver may not refuse testing to avoid the potential consequences of test submis-

sion and to avoid the penalties of refusal by remaining ambivalent." *McCoy,* 2014 ND 119, ¶ 12, 848 N.W.2d 659. The implied consent law "does not apply when a person voluntarily consents to chemical testing." *Id.* at ¶ 13.

[¶ 10] In *State v. Murphy,* we examined N.D.C.C. §§ 39–20–04 and 39–20–08, which attached penalties for refusing to submit to testing:

The operator of a motor vehicle on a highway or area to which the public has a right to access for vehicular use is deemed to have consented to a chemical test to determine the alcohol content of his blood if arrested for driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor. Drivers may refuse to submit to chemical testing. Allowing drivers to refuse testing is a matter of legislative grace. The State wants a driver to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test. A state may, therefore, attach penalties to a driver's choice to refuse testing. Our Legislature has attached penalties to an arrested driver's refusal to submit to testing.

527 N.W.2d 254, 255–56 (N.D.1995) (citations omitted) (quotation marks omitted).

[¶ 11] Even though the issue on appeal is limited to the voluntariness of Smith's actual consent, we recognize North Dakota is not the only state to have adopted an implied consent law that attached an administrative penalty to refusal, and North Dakota is not the only state to adopt an implied consent law that criminalizes refusal. In *McNeely,* the United States Supreme Court recognized:

States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without under-

taking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense. Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.

*Id.* at 1566 (citations omitted). Alaska, Florida, Kansas, Minnesota, Nebraska, Vermont, and Virginia have also criminalized refusal to submit to chemical testing. *See* Alaska Stat. Ann. § 28.35.032 (West 2010); Fla. Stat. Ann. § 316.1932 (West 2006); Kan. Stat. Ann. § 8–1025 (West 2013); Minn.Stat. Ann. § 169A.20, subd. 2 (West 2009); Neb.Rev.Stat. § 60–6,197 (2011); Vt. Stat. Ann. tit. 23, § 1202 (West 2001); Va.Code Ann. § 18.2–268.3 (West 2009).

[¶ 12] We have held that our implied consent statute "does not apply when a person voluntarily consents to chemical testing." *McCoy*, 2014 ND 119, ¶ 13, 848 N.W.2d 659. Therefore, after a driver consents to testing, the question becomes whether the driver's consent to chemical testing was "voluntary." *Id.* at ¶ 14. "A person does not consent by merely acquiescing to a claim of legal authority." *Id.* "The issue of voluntariness is generally decided by examining the totality of the circumstances." *Id.* Consent is voluntary when it is the product of a free and unconstrained choice and not the product of duress or coercion. *Mitzel*, 2004 ND 157, ¶ 26, 685 N.W.2d 120. "To determine voluntariness, we focus on two elements: (1) the characteristics and condition of the accused at the time of the consent, and (2) the details of the setting in which the consent was obtained, with no one factor being determinative." *Id.* "[W]e will show great deference on appeal to the trial court's determination of voluntariness by refusing to reverse its decision unless it is contrary to the manifest weight of the evidence." *McCoy*, at ¶ 14.

[¶ 13] Smith contends that the United States Supreme Court in *McNeely*, 133 S.Ct. 1552, "placed DUI searches for evidence on par with any other search for evidence" and breath samples require probable cause and a search warrant. In *McNeely*, the United States Supreme Court held "that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at 1568. Whether the natural dissipation of alcohol in the bloodstream constitutes an exigency must be determined case by case based on the "totality of the circumstances." *Id.* at 1556. The parameters of "legislative grace" have been narrowed by the holding in *McNeely* by the United States Supreme Court's declining to adopt a per se exigency. However, *McNeely* did not indicate exigent circumstances could never exist, so "legislative grace" allowing refusal, at the very least, continues to apply to situations where law enforcement officers attempt to force a blood draw based on exigent circumstances. Unlike *McNeely*, the warrant requirement exception at issue here involves consent rather than exigent circumstances.

[¶ 14] The Minnesota Supreme Court recently examined its own implied consent statute, which criminalizes refusal. *See State v. Brooks*, 838 N.W.2d 563 (Minn. 2013). In *Brooks*, the defendant argued:

[H]e did not truly have a choice of whether to submit to the tests because

police told him that if he did not do so, he would be committing a crime, and he contends that the fact that police advised him that it is a crime to refuse the chemical tests renders any consent illegally coerced. *Id.* at 570. The Minnesota Supreme Court held there was a choice and the defendant consented under the totality of the circumstances. *Id.* at 570–72. The Minnesota Supreme Court explained "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. The Minnesota Supreme Court also explained "[w]hile an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572. The Minnesota Supreme Court relied on the reasoning in *S.D. v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

[¶ 15] In *Neville*, 459 U.S. 553, 103 S.Ct. 916, the United States Supreme Court held that a driver is not coerced into incriminating himself, in violation of the Fifth Amendment, when the State introduces his refusal to submit to chemical tests into evidence in a criminal trial for DUI. The Court concluded that "the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices." *Id.* at 564, 103 S.Ct. 916.

[¶ 16] We have previously agreed with the rationale and conclusions in *Brooks* when analyzing whether consent was coerced because an administrative penalty attached to refusing the test. *McCoy*, 2014 ND 119, ¶ 21, 848 N.W.2d 659. In *McCoy*, we rejected the argument that

consent was coerced and not free and voluntary merely by the law enforcement officer's reading of the implied consent advisory that accurately informed McCoy of the consequences for refusal and presenting McCoy with a choice. *Id.* This case differs from *McCoy* in that the level of penalty has increased. The increase of the penalty does not change our analysis using the rationale we applied in *McCoy* when we previously relied on *Brooks*. We continue to base our analysis of consent under the totality of the circumstances to determine voluntariness.

[¶ 17] Under North Dakota's implied consent law, "implied consent occurs at the time an individual operates a motor vehicle." *McCoy*, 2014 ND 119, ¶ 23, 848 N.W.2d 659. The driver has the choice of withdrawing or ratifying the consent if he or she is subsequently stopped and advised of the implied consent law. *Id.* In this case, as in *McCoy*, the deputy asked for and received actual consent from Smith after advising him of the implied consent law. Thus, the proper analysis is whether the State met its burden of establishing Smith voluntarily consented to the Intoxilyzer 8000 test based on the totality of the circumstances surrounding Smith's actual consent. *See id.*

[¶ 18] Prior to the preliminary breath test, the deputy advised Smith of the implied consent law, which criminalizes refusal to take the test. Smith does not argue on appeal that his consent to the preliminary test was coerced. After Smith's arrest, the deputy advised him of the implied consent law a second time, again advising of the criminal penalty for refusal to take the chemical test, and he consented to take the chemical breath test. Smith argues he was "coerced" into giving consent when the deputy advised him of the implied consent law because he was given the choice of waiving his rights un-

der U.S. Const. amend. IV and N.D. Const. art. I, § 8 or being charged with a crime. This second choice was offered after Smith had been arrested for DUI, was handcuffed, and seated in the back of the deputy's patrol vehicle.

[¶ 19] With respect to the question of coercion, this Court has held "[t]he circumstances should be viewed as more suspect when the subject is in custody." *State v. Lange*, 255 N.W.2d 59, 64 (N.D.1977). But, the fact that Smith was under arrest when the deputy advised him of the implied consent law and requested Smith take the Intoxilyzer 8000 test is not dispositive here. Smith was arrested, immediately advised of the implied consent law, and asked once if he would submit to chemical testing. Smith's consent was not given after spending considerable time in custody or after repeated requests by the deputy to submit to chemical testing. *See Brooks*, 838 N.W.2d at 571.

[¶ 20] We have held that another factor in determining the voluntariness of consent includes the law enforcement officer's statements to a defendant, whether intentionally or unintentionally misleading. *State v. Abrahamson*, 328 N.W.2d 213, 216 (N.D.1982). The deputy twice advised Smith of the implied consent law, using similar language included in the statute. The deputy's advisory was not misleading.

[¶ 21] The advisory given informed Smith the law requires him to take the test and refusal is a crime that may result in a revocation of his driving privileges. The district court concluded that under the circumstances of this case, Smith's consent was not coerced. As discussed, in *Brooks*, an individual's consent is not coerced simply because a criminal penalty has been attached to refusing the test or that law enforcement advises the driver of that law. 838 N.W.2d at 570–72. Here, examining the totality of the circumstances, considering the two elements of voluntariness, the State has met its burden. At the time Smith agreed to take the Intoxilyzer 8000 test, nothing exists in the record to support a claim that Smith's actual consent was involuntary or coerced. No evidence was offered to show Smith's consent was the product of coercion by the deputy. The record establishes that the deputy advised Smith of the implied consent law and asked Smith to take a chemical test and that Smith, when presented with the choice of either ratifying or withdrawing his implied consent, agreed to take the test. The audio recording of this exchange does not support Smith's claims because the deputy merely used the language of the statute. Smith could have refused but was informed that refusal is a crime that could result in a revocation of his driving privileges. Smith was still offered a choice. *See Neville*, 459 U.S. at 564, 103 S.Ct. 916. In deciding that Smith's consent was voluntary, the district court considered the totality of the circumstances and the district court's determination was based on a correct application of the law.

IV

[¶ 22] We conclude there was sufficient competent evidence to support the district court's denial of Smith's motion to suppress evidence and the decision does not go against the manifest weight of the evidence. The criminal judgment is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 24] I understand the majority to be saying: While the voluntariness of consent is decided from the totality of the circumstances, submitting to a blood alcohol test

is not rendered involuntary merely by an officer fairly giving the implied consent advisory including the criminal penalty for refusing to take the test. I agree.

[¶ 25] DALE V. SANDSTROM