2015 ND 6

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**Danny BIRCHFIELD, Defendant
and Appellant.**

No. 20140109.

Supreme Court of North Dakota.

Jan. 15, 2015.

Rehearing Denied Feb. 12, 2015.

Justin M. Balzer, Morton County Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

Danny L. Herbel, The Regency Business Center, Bismarck, N.D., for defendant and appellant.

Ken R. Sorenson, Office of Attorney General, Bismarck, N.D., for amicus curiae.

McEVERS, Justice.

[¶ 1] Danny Birchfield appeals from a criminal judgment entered on a conditional plea of guilty to class B misdemeanor refusal to submit to a chemical test in violation of N.D.C.C. § 39–08–01, reserving his right to appeal the district court's denial of his motion to dismiss the charge on constitutional grounds. Because we conclude the criminal refusal statute does not violate Birchfield's rights under the Fourth Amendment or N.D. Const. art. I, § 8, we affirm the criminal judgment.

I

[¶ 2] On October 10, 2013, Birchfield drove into a ditch in Morton County. A highway patrol officer arrived at the scene, believed Birchfield was intoxicated, and asked Birchfield to perform field sobriety tests, which he failed. Birchfield took a preliminary breath test, which revealed a .254 percent alcohol concentration. The officer placed Birchfield under arrest and read him the implied consent advisory. Birchfield refused to consent to a chemical test.

[¶ 3] Birchfield was charged with refusal to submit to a chemical test in violation of N.D.C.C. § 39–08–01, a class B misdemeanor. Birchfield moved to dismiss the criminal charge, contending N.D.C.C. § 39–08–01, which criminalizes a refusal to submit to a chemical test, is unconstitutional under the Fourth Amendment and its state counterpart, N.D. Const. art. I, § 8. The district court concluded Birchfield's rights under these provisions were not violated by the criminal charge for refusing to consent to a chemical test. Birchfield conditionally pled guilty under N.D.R.Crim.P. 11(a)(2), reserving his right to appeal the court's order denying his motion to dismiss.

II

[¶ 4] Birchfield argues the district court erred in denying his motion to dismiss because the criminal refusal statute is unconstitutional under the Fourth Amendment and N.D. Const. art. I, § 8, and as applied to him.

[¶ 5] Our standard for reviewing constitutional challenges to legislative enactments is well-established:

The determination whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. All regularly enacted statutes carry a strong presumption of constitutionality,

which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. Any doubt about a statute's constitutionality must, when possible, be resolved in favor of its validity. The power to declare a legislative act unconstitutional is one of the highest functions of the courts, and that power must be exercised with great restraint. The presumption of constitutionality is so strong that a statute will not be declared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt. The party challenging the constitutionality of a statute has the burden of proving its constitutional infirmity.

*Simons v. State*, 2011 ND 190, ¶ 23, 803 N.W.2d 587 (internal citations omitted).

[¶ 6] Driving is a privilege, not a constitutional right and is subject to reasonable control by the State under its police power. *See, e.g., State v. Smith*, 2014 ND 152, ¶ 8, 849 N.W.2d 599; *McCoy v. North Dakota Dep't of Transp.*, 2014 ND 119, ¶ 26, 848 N.W.2d 659. Under N.D.C.C. § 39–20–01(1), an individual who drives "is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test...." A chemical test may be administered "only after placing the individual ... under arrest." N.D.C.C. § 39–20–01(2). However, a driver has a right to refuse a chemical test under N.D.C.C. § 39–20–04(1), which provides, "If a person refuses to submit to testing under section 39–20–01 ..., none may be given." *See State v. Fetch*, 2014 ND 195, ¶ 8, 855 N.W.2d 389.

[¶ 7] The criminal refusal provision is contained in N.D.C.C. § 39–08–01, which provides in relevant part:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

. . . .

e. That individual refuses to submit to any of the following:

. . . .

(2) A chemical test, or tests, of the individual's blood, breath, or urine to determine the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine, at the direction of a law enforcement officer under section 39–20–01; ...

. . . .

2. An individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state who refuses to submit to a chemical test, or tests, required under section ... 39–20–01 ... is guilty of an offense under this section.

Section 39–20–01, N.D.C.C., sets forth the implied consent requirements for motor vehicle drivers in general and in subsection 3 states that the "law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs" and "that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence."

[¶ 8] The Fourth Amendment and N.D. Const. art. I, § 8, prohibit unreasonable searches and seizures, and the administration of chemical tests to determine alcohol concentration is a search for purposes of these constitutional provisions. *See Smith*, 2014 ND 152, ¶ 7, 849 N.W.2d 599; *McCoy*, 2014 ND 119, ¶ 10, 848 N.W.2d 659. Before the Legislature en-

acted the criminal refusal statute in 2013, this Court had observed "[t]here is no Federal constitutional right to be entirely free of intoxication tests," *State v. Murphy*, 516 N.W.2d 285, 286 n. 1 (N.D.1994), and noted a "driver has only a conditional right to refuse a chemical test" because "[a]mong the conditions imposed upon the exercise of one's right to refuse a chemical test are the revocation of the person's license or permit to drive a vehicle and the admission in evidence of proof of refusal in civil or criminal actions." *State v. Murphy*, 527 N.W.2d 254, 256 (N.D.1995). We had not specifically ruled on a Fourth Amendment challenge to the penalty provisions of the implied consent statutes as they existed at the time.

[¶ 9] However, other states during this period had enacted statutes criminalizing the refusal to consent to a chemical test, and Fourth Amendment challenges to those statutes were unsuccessful. For example, in *Burnett v. Municipality of Anchorage*, 806 F.2d 1447, 1451 (9th Cir. 1986), the Ninth Circuit Court of Appeals upheld Alaska's criminal refusal statute against a Fourth Amendment challenge:

> Appellants' basic argument is that they have been deprived of their right to be free of unreasonable searches. Nothing in the Alaska statutes here at issue deprives them of that right, or otherwise burdens it. A motorist who has been stopped for DWI and who wishes to vindicate himself has two choices under the law. He may take the test as the state prefers him to do. If he does, and the evidence obtained is favorable to him, he will gain his prompt release with no charge being made for drunk driving. *See Mackey v. Montrym*, 443 U.S. [1, 19, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) ]. If the evidence is unfavorable, he may challenge the government's use of that evidence by attacking the validity of the arrest. If he does not take the test, he

can still challenge the evidence of his refusal by once again attacking the validity of the arrest. Either way, he remains fully capable of asserting the only Fourth Amendment right he possesses: the right to avoid arrest on less than probable cause. Thus, no improper condition has been placed on the exercise of appellants' rights under the Fourth Amendment.

*See also State v. Netland*, 762 N.W.2d 202, 214 (Minn.2009) ("We hold that the criminal test-refusal statute does not violate the prohibition against unreasonable searches and seizures found in the federal and state constitutions because under the exigency exception, no warrant is necessary to secure a blood-alcohol test where there is probable cause to suspect a crime in which chemical impairment is an element of the offense.") (footnote omitted); *Rowley v. Commonwealth*, 48 Va.App. 181, 629 S.E.2d 188, 191 (2006) (no Fourth Amendment violation for criminally punishing refusal to provide breath sample because the "act of driving constitutes an irrevocable, albeit implied, consent to the officer's demand for a breath sample"). The courts in these cases relied in part on the United States Supreme Court's decision in *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (internal citation omitted), which upheld the warrantless blood test of a person arrested for driving under the influence because the arresting officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' "

[¶ 10] In 2013, the United States Supreme Court decided *Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 1568, 185 L.Ed.2d 696 (2013) (plurality decision), which held that "in drunk-driving investi-

gations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." The Court rejected the notion that *Schmerber* established that natural dissipation of alcohol in the bloodstream is a per se exigency that suffices to justify an exception to the warrant requirement, and interpreted *Schmerber* to require a "totality of the circumstances approach." *Id.* at 1559. The Court rejected the argument that a per se exigency rule was necessary to protect the governmental interest in preventing and prosecuting drunk-driving offenses noting:

> States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.... Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution .... see also *South Dakota v. Neville*, 459 U.S. 553, 554, 563–564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination).

*Id.* at 1566.

[¶ 11] Since the *McNeely* decision, we have held that consent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice. *See McCoy*, 2014 ND 119, ¶ 21, 848 N.W.2d 659; *Smith*, 2014 ND 152, ¶ 16, 849 N.W.2d 599; *State v. Boehm*, 2014 ND 154, ¶ 20, 849 N.W.2d 239; *Fetch*, 2014 ND 195, ¶ 9, 855 N.W.2d 389. The United States Supreme Court has not decided, and it is a question of first impression in North Dakota, whether criminalizing a refusal to consent to a chemical test violates a person's right to be free from unreasonable searches and seizures.

[¶ 12] Birchfield has not drawn our attention to any appellate court decisions striking down criminal refusal statutes, and we have found that since the Supreme Court's ruling in *McNeely*, criminal refusal statutes have continued to withstand Fourth Amendment challenges, particularly in Minnesota. The Minnesota Court of Appeals has held that the "Fourth Amendment does not prohibit the state from criminalizing a suspected drunk driver's refusal to submit to a breath test for alcohol content when the circumstances established a basis for the officer to have alternatively pursued a constitutionally reasonable nonconsensual test by securing and executing a warrant." *State v. Bernard*, 844 N.W.2d 41, 42 Syll., 47 (Minn. Ct.App.2014) (but declining to decide whether "the implied consent law is unconstitutional because it conditions the exercise of the privilege of driving on the driver surrendering his constitutional right to be free of unreasonable searches and seizures"), *review granted* (May 20, 2014). *See also State v. Brooks*, 838 N.W.2d 563, 572 (Minn.2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 1799, 188 L.Ed.2d 759 (2014) (rejecting constitutional argument that "the Legislature does not have the power to imply someone's

consent to waive his or her Fourth Amendment rights as a condition of granting the privilege to drive in Minnesota"). In *State v. Yong Shik Won*, 134 Hawai'i 59, 332 P.3d 661, 681–82 (Ct.App.2014), *cert. granted*, 2014 WL 2881259 (Hawai'i, June 24, 2014), the Hawai'i Court of Appeals held that its "statutory scheme, which imposes [criminal] sanctions to dissuade a driver from withdrawing his or her con[s]ent [to a breath test], is reasonable and does not violate the Fourth Amendment" or its state constitutional counterpart. Numerous unreported decisions, mostly from the Minnesota Court of Appeals, have also ruled criminal refusal statutes do not violate the Fourth Amendment. *See, e.g., Hoover v. Ohio*, 549 Fed. Appx. 355 (6th Cir.2013); *United States v. Muir*, 2014 WL 4258701 (D.Ct.Md., Aug. 28, 2014); *State v. Isaacson*, 2014 WL 1271762 (Minn.Ct.App., March 31, 2014) *review granted* (June 17, 2014); *State v. Manska*, 2014 WL 1516316 (Minn.Ct.App., April 21, 2014), *review granted* (June 25, 2014); *State v. Ornquist*, 2014 WL 2565662 (Minn.Ct.App., June 9, 2014); *State v. Johnson*, 2014 WL 2565771 (Minn. Ct.App., June 9, 2014), *review granted* (August 19, 2014); *State v. Chasingbear*, 2014 WL 3802616 (Minn.Ct.App., Aug. 4, 2014) *review granted* (Oct. 14, 2014); *State v. Poitra*, 2014 WL 3892709 (Minn. Ct.App., Aug. 11, 2014) *review granted* (Oct. 14, 2014); and *State v. Trahan*, 2014 WL 4798876 (Minn.Ct.App., Sept. 29, 2014) *review granted* (Dec. 16, 2014).

[¶ 13] In addressing *McNeely*, these courts point out as we have in our cases, that *McNeely* merely held the natural metabolization of alcohol in the bloodstream is not a per se exigency justifying a Fourth Amendment exception to the warrant requirement for nonconsensual blood testing in all drunk-driving cases, and did not address the constitutional validity of implied consent statutes. *See, e.g., Yong Shik Won*, 332 P.3d at 682; *Isaacson*, 2014 WL 1271762 at *2. They also point out the *McNeely* Court referred to acceptable "legal tools" with "significant consequences" for refusing to submit to testing which are available to the states as alternatives to warrantless, nonconsensual blood draws, including the constitutional use under the Fifth Amendment of a defendant's refusal to submit to chemical testing to show the defendant is guilty of drunk driving under *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). *See, e.g., Yong Shik Won*, at 682; *Manska*, 2014 WL 1516316 at *7; *Chasingbear*, 2014 WL 3802616 at *2. The *Chasingbear* court explained:

> While the re-emphasized *Neville* decision is not a Fourth Amendment case, *McNeely* certainly is. And it was in the Fourth Amendment context that *McNeely* expressly reminds us through *Neville* that a state can *constitutionally* use the driver's test refusal (that is, the driver's exercise of his Fourth Amendment right not to be tested without consent) as inferential evidence *to convict the driver of a crime*, even though the Constitution would have prohibited the state from forcing that driver to submit to an actual chemical test. This contrasts sharply with the general rule that due process bars prosecutors from referring to a defendant's refusal to consent to a warrantless search to raise an inference of guilt … That the Supreme Court in *McNeely* buttressed its Fourth Amendment holding on the states' lawful authority to rely on test refusals to convict drivers of a crime significantly undermines the district court's conclusion that the Minnesota test-refusal statute is infected by a fatal Fourth Amendment infirmity.

*Id.* (citations omitted).

[¶ 14] The district court in this case ruled because Birchfield refused to be test-

ed, as was his right, and was not tested, "[t]here was no search so there was no Fourth Amendment violation." This reasoning requires examination of *Camara v. Municipal Court of City & Cnty. of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), relied upon by Birchfield, in which no search was conducted but the Supreme Court found a Fourth Amendment violation. In *Camara*, a property owner refused to allow a warrantless inspection of his premises, but a city ordinance authorized city employees " 'upon presentation of proper credentials' " to enter any building in the city. *Id.* at 526, 87 S.Ct. 1727. The owner was criminally charged with refusing to permit an inspection in violation of the city code and he argued the city code section "is contrary to the Fourth and Fourteenth Amendments in that it authorizes municipal officials to enter a private dwelling without a search warrant and without probable cause to believe that a violation of the Housing Code exists therein." *Id.* at 527, 87 S.Ct. 1727. The Supreme Court ruled the owner "had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." *Id.* at 540, 87 S.Ct. 1727.

[¶ 15] Courts have distinguished *Camara* on the grounds urged by the State in this case. Unlike the regulation in *Camara* which allowed for suspicionless searches of private property, implied consent laws, like North Dakota law, do not authorize chemical testing unless an officer has probable cause to believe the defendant is under the influence, and the defendant will already have been arrested on the charge. *See, e.g., Hoover*, 549 Fed. Appx. at 356; *Poitra*, 2014 WL 3892709 at *2 n. 3. Even onsite screening tests are allowed only when an officer "has reason to believe that the individual committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol," N.D.C.C. § 39–20–14(1), and the *Camara* Court would have authorized code enforcement searches on less than traditional probable cause. 387 U.S. at 534–39, 87 S.Ct. 1727. Unlike the regulation in *Camara*, the test refusal statute criminalizes the refusal to submit to a chemical test but does not authorize a warrantless search. *See Poitra*, at *4. Furthermore, reliance on *Camara* "overlooks the apparent difference between the way the Supreme Court treats cases in which the Fourth Amendment affects searching individuals by testing in the drunk-driving context and those where it affects a home search in any context." *Chasingbear*, 2014 WL 3802616 at *14.

[¶ 16] For similar reasons, Birchfield's reliance on *Ferguson v. City of Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), and cases like it, is unavailing. In *Ferguson*, the Supreme Court struck down a warrantless, suspicionless regime of mandatory drug testing of maternity patients in which the test results were disclosed to police for law enforcement purposes. *Id.* at 77 n. 10, 86, 121 S.Ct. 1281. *See also, e.g., Marshall v. Barlow's, Inc.*, 436 U.S. 307, 310, 325, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (holding unconstitutional statute allowing warrantless, suspicionless searches to inspect for safety hazards and violations of OSHA regulations); *See v. City of Seattle*, 387 U.S. 541, 546, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (reversing conviction for refusing to permit fire department inspection of appellant's locked commercial warehouse without a warrant and without probable cause to believe a violation of municipal ordinances existed); *Lebron v. Secretary of Florida*

*Dep't of Children and Families,* 772 F.3d 1352, 1378 (11th Cir.2014) (holding "the warrantless, suspicionless urinalysis drug testing of every Florida [Temporary Assistance for Needy Families] applicant as a mandatory requirement for receiving Temporary Cash Assistance offends the Fourth Amendment"); *State v. Stewart,* 2014 ND 165, ¶ 18, 851 N.W.2d 153 (holding unconstitutional a warrantless entry into defendant's home and rejecting application of the inevitable discovery doctrine because the "doctrine does not apply when the warrant requirement is simply bypassed without exigent circumstances"). Because none of these cases were decided in the context of drunk-driving prosecutions where an officer had probable cause to search a defendant's body, we do not believe they are helpful in determining whether criminalizing a defendant's refusal to submit to a chemical test when an officer has probable cause to believe the defendant is under the influence of alcohol violates a defendant's Fourth Amendment rights. Indeed, the Supreme Court has said "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.'" *Jenkins v. Anderson,* 447 U.S. 231, 236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 30, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)).

[¶ 17] Furthermore, the "touchstone of the Fourth Amendment is reasonableness," which is assessed by balancing the promotion of legitimate governmental interests with the intrusion on an individual's privacy. *State v. Adams,* 2010 ND 184, ¶ 15, 788 N.W.2d 619. There is no question "the State's interest in decreasing drunk driving is a valid public concern. Indeed, '[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion.'" *Martin v. North Dakota Dep't of Transp.,* 2009 ND 181, ¶ 7, 773 N.W.2d 190 (quoting *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990)). A licensed driver has a diminished expectation of privacy with respect to enforcement of drunk-driving laws because he or she is presumed to know the laws governing the operation of a motor vehicle, and the implied consent laws contain safeguards to prohibit suspicionless requests by law enforcement officers to submit to a chemical test. *See, e.g., Yong Shik Won,* 332 P.3d at 681; *Stevens v. Commissioner of Pub. Safety,* 850 N.W.2d 717, 728–29 (Minn.Ct.App.2014); *Muir,* 2014 WL 4258701 at *6. The Legislature created a statutory right to refuse a chemical test, but has attached significant consequences to refusal so a driver may not avoid the potential consequences of test submission and gain an advantage by simply refusing the test. *See, e.g., Smith,* 2014 ND 152, ¶¶ 9–10, 849 N.W.2d 599; *McCoy,* 2014 ND 119, ¶ 12, 848 N.W.2d 659; *Murphy,* 527 N.W.2d at 255–56. The defendant here submitted to a preliminary breath test which yielded a result well above the alcohol concentration necessary to implicate the possibility that he may have been subject to enhanced penalties based on his level of intoxication. N.D.C.C. § 39–08–01(5)(a)(2) (adding additional penalties for a first offense conviction, of a higher minimum fine and at least two days' imprisonment, where the alcohol concentration is at least sixteen one hundredths of one percent by weight). By choosing to refuse further testing, he was subject to criminal penalty for the refusal, but was able to avoid the enhanced penalties for being highly intoxicated. Criminal refusal statutes were in existence in some states at the time *McNeely* was decided,

*see, Smith,* at ¶ 11, a fact the Supreme Court must have been aware when it noted the "broad range of legal tools" available to states to enforce drunk-driving laws which "impose significant consequences when a motorist" refuses to consent to a chemical test. *McNeely,* 133 S.Ct. at 1566. Criminally penalizing test refusal "reduces the likelihood that drunk drivers will avoid a criminal penalty" by refusing to take a test and, therefore, it is "reasonable because it is an efficient tool in discouraging drunk driving." *Chasingbear,* 2014 WL 3802616 at *12, *13; *Johnson,* 2014 WL 2565771, at *6; *see also Yong Shik Won,* 332 P.3d at 681 n. 23 ("It is reasonable for the Legislature to condition its grant of the privilege of driving on a person's agreement to submit to breath testing if arrested.... It is also reasonable for the Legislature to enforce that bargain by imposing [criminal] penalties on a driver who refuses to honor his or her agreement."). The criminal refusal statute satisfies the general reasonableness requirement of the Fourth Amendment.

[¶ 18]  Finally, in *Smith,* 2014 ND 152, ¶ 16, 849 N.W.2d 599, this Court relied on the Minnesota Supreme Court's decision in *Brooks,* 838 N.W.2d 563, to hold the giving of the implied consent advisory informing the arrestee that refusing a chemical test is a crime does not render consent to the test involuntary. The court in *Chasingbear,* 2014 WL 3802616, noted the anomalous situation that would arise if the Minnesota criminal refusal statute was ruled unconstitutional.

Chasingbear cites *Brooks,* but he does not attempt to answer the question that arises from its holding as applied to this case: If the state threatens action that is not unconstitutionally coercive in violation of a person's Fourth Amendment rights, how can the state's carrying out the threat violate the person's Fourth Amendment rights? Although Chasing-

bear does not offer an answer, the *Brooks* court, like the *McNeely* Court, suggests one: "Although refusing the test comes with criminal penalties in Minnesota, ... [and] the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" [838 N.W.2d] at 571 (quoting *Neville,* 459 U.S. at 564, 103 S.Ct. at 923).

*Chasingbear,* at *3.

[¶ 19]  Unpublished  decisions from other jurisdictions have value if they are persuasive. *Lucas v. Riverside Park Condominiums Unit Owners Ass'n,* 2009 ND 217, ¶ 19, 776 N.W.2d 801; *In re Guardianship of Barros,* 2005 ND 122, ¶ 15, 701 N.W.2d 402. We recognize that several of these decisions, both reported and unreported, are pending review, but we find their reasoning persuasive. We conclude the criminal refusal statute is not unconstitutional under the Fourth Amendment or N.D. Const. art. I, § 8, or as applied to Birchfield.

## III

[¶ 20]  We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The criminal judgment is affirmed.

[¶ 21]  GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.