2015 ND 18

**Steve Michael BEYLUND, Petitioner and Appellant**

v.

**Grant LEVI, Director of the Department of Transportation, Respondent and Appellee.**

**No. 20140133.**

Supreme Court of North Dakota.

Feb. 12, 2015.

Rehearing Denied March 24, 2015.

■■■■■■■■■■■■■■■■■■

─────────

Thomas F. Murtha IV, Dickinson, ND, for petitioner and appellant.

Douglas B. Anderson, Office of Attorney General, Bismarck, ND, for respondent and appellee.

McEVERS, Justice.

[¶ 1] Steve Michael Beylund appeals from a district court judgment affirming a Department of Transportation decision suspending his driving privileges for two years. We affirm concluding Beylund voluntarily consented to the chemical blood test administered by the police officer, and the criminal refusal statute does not violate Beylund's right under the Fourth Amendment or N.D. Const. art. I, § 8, nor does it violate the Fourth Amendment under the doctrine of unconstitutional conditions. We decline to address Beylund's argument regarding the legality of the stop because the issue was not sufficiently articulated in Beylund's specifications of error.

I

[¶ 2] On August 10, 2013, a Bowman police officer was dispatched to a call of an unwanted person. The police officer observed a vehicle that matched the given description of the unwanted person's vehicle, although the police officer testified that he "didn't think anything of that at the time." The police officer observed the vehicle nearly hit a stop sign while making a right hand turn into a driveway. The vehicle then stopped, partially in the roadway. The police officer testified he pulled up and stopped behind the vehicle, without activating his patrol car's emergency lights, and approached the vehicle "to make sure everything was fine with the individual or what was going on."

[¶ 3] According to the police officer's testimony, when he approached the vehicle, he noticed an empty wine glass in the center console and an odor of alcohol emanating from the vehicle. The police officer returned to his patrol car to activate its amber warning lights. The police officer requested Beylund exit the vehicle, but he refused, until the police officer opened the door and commanded him to exit. Beylund struggled with his balance and was generally uncooperative. Beylund refused all field sobriety tests, claiming he had a "bad leg." Beylund agreed to take an onsite screening test, but failed to provide an adequate breath sample. The police officer then arrested Beylund and transported him to the hospital. At the hospital, the police officer read the implied consent advisory to Beylund, and Beylund agreed to take a chemical blood test. A blood sample was collected and submitted to the state laboratory. The test results showed an alcohol concentration of 0.250 g/100ml.

[¶ 4] In September 2013, a hearing was held before a Department of Transportation hearing officer. At the conclusion of the hearing, the hearing officer found the police officer had reasonable grounds to believe Beylund had been driving a vehicle while under the influence of intoxicating liquor in violation of N.D.C.C. § 39-08-01. Accordingly, the hearing officer suspended Beylund's driving privileges for two years.

[¶ 5] Beylund petitioned for reconsideration of the hearing officer's decision. Beylund argued the blood test was an unconstitutional warrantless search, without a valid exception to the warrant requirement, and North Dakota's implied consent law violates the unconstitutional conditions doctrine. The hearing officer

granted Beylund's petition for reconsideration, but denied relief.

[¶ 6] Beylund filed a notice of appeal and specifications of error with the clerk of district court, appealing the hearing officer's suspension of his driving privileges. Beylund's specifications of error raised the same issues as his petition for reconsideration. However, in Beylund's appellant's brief to the district court, he also asserted the stop of his vehicle was illegal. The district court affirmed the hearing officer's decision. Beylund now appeals to this Court.

## II

[¶ 7] "This Court reviews the Department's decision to suspend a person's driving privileges under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 6, 848 N.W.2d 659 (citing *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 6, 832 N.W.2d 319). "We review the agency's decision on appeal from the district court. However, the district court's analysis is entitled to respect if it is sound." *Herrman v. N.D. Dep't of Transp.*, 2014 ND 129, ¶ 6, 847 N.W.2d 768 (citation omitted) (quotation marks omitted). An agency's decision is accorded great deference, when reviewed on appeal. *McCoy*, at ¶ 6. Under N.D.C.C. § 28–32–46, we must affirm an administrative agency's decision unless one of the following conditions applies:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 8] "We do not make independent findings of fact or substitute our judgment for that of the agency." *Fossum v. N.D. Dep't of Transp.*, 2014 ND 47, ¶ 9, 843 N.W.2d 282. Rather, we solely determine "whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Yellowbird v. N.D. Dep't of Transp.*, 2013 ND 131, ¶ 8, 833 N.W.2d 536. Once the facts are established, their significance presents a question of law, which we review de novo. *Bell v. N.D. Dep't of Transp.*, 2012 ND 102, ¶ 20, 816 N.W.2d 786. The "standard of review for a claimed violation of a constitutional right is de novo." *Martin v. N.D. Dep't of Transp.*, 2009 ND 181, ¶ 5, 773 N.W.2d 190.

## III

[¶ 9] Beylund argues his stop was illegal because law enforcement did not have a reasonable articulable suspicion and the community caretaker function does not apply. The Department argues Beylund waived his argument regarding the legality of the stop, by not including it in his specifications of error to the district court

and, therefore, this Court should decline to consider this argument on appeal.

[¶10] Under N.D.C.C. § 28–32–42(4), a party appealing from the Department's decision to suspend driving privileges must file a notice of appeal and specifications of error. *Midthun v. N.D. Workforce Safety Ins.*, 2009 ND 22, ¶7, 761 N.W.2d 572; *Daniels v. Ziegler*, 2013 ND 157, ¶7, 835 N.W.2d 852. The specifications of error must be reasonably specific, "detailing which matters are at issue, so as to alert the agency, other parties, and the court of the particular errors claimed." *Midthun*, 2009 ND 22, ¶7, 761 N.W.2d 572 (citing *Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 454 (N.D.1996)). "Boilerplate specifications of error which are general enough to apply to any administrative agency appeal are not tolerated by this Court, and are ripe for dismissal." *Midthun*, at ¶7 (citing *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶15, 676 N.W.2d 799). This Court will not consider issues that are not enumerated in the specifications of error. *Id.*

[¶11] Here, Beylund did not include the legality of his stop argument in the specifications of error to the district court. Rather, he merely asserted he "reserves the right to make additional specifications of error pending receipt of the transcript of the administrative hearing." Beylund's broad attempt to reserve the right to make additional specifications of error was not reasonably specific enough to effectively preserve the legality of the stop argument. In *Isaak v. Sprynczynatyk*, we concluded the phrase: "[a]ny other issues to be determined following a review of the hearing transcript" in a specifications of error was boilerplate because it was "so general it could apply to any administrative agency appeal." 2002 ND 64, ¶¶4, 7, 642 N.W.2d 860. We similarly conclude Beylund's specifications of error

attempting to reserve the right to make additional arguments after he received the administrative hearing transcript is "so general it could apply to any administrative agency appeal." *Id.* at ¶7. Accordingly, Beylund waived his argument regarding the legality of his stop; therefore, we decline to address it.

IV

[¶12] Beylund argues his right to be free of unreasonable searches and seizures, under the Fourth Amendment and N.D. Const. art. I, § 8, was violated by the chemical test of his blood, under the State's implied consent law. Without specifically referencing any statute, he claims his consent to take the test was involuntary because he was coerced by the statute's penalties, which criminalize refusal. Beylund does not allege any coercive circumstances, other than the penalties under N.D.C.C. ch. 39–20.

[¶13] Beylund relies in part on *Camara v. Mun. Court of the City & Cnty. of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), to support his premise that the criminal refusal law violates the Fourth Amendment. In *Camara*, a city ordinance authorized city employees to enter any building in the city after presenting proper credentials, and provided for a criminal penalty if the owner refused. *Id.* at 526–27, 87 S.Ct. 1727. The Supreme Court ruled the owner "had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection." *Id.* at 540, 87 S.Ct. 1727.

[¶14] As we recently discussed in *State v. Birchfield*, in the context of North Dakota's implied consent law challenges, this Court is not persuaded by *Camara*, and cases like it:

Unlike the regulation in *Camara* which allowed for suspicionlesss searches of private property, implied consent laws, like North Dakota law, do not authorize chemical testing unless an officer has probable cause to believe the defendant is under the influence, and the defendant will already have been arrested on the charge.

2015 ND 6, ¶ 15, 858 N.W.2d 302.

[¶ 15] Prior to *Birchfield*, this Court recently considered state and federal constitutional challenges of the State's implied consent law based on arguments that a driver is coerced by the penalty for refusal. In *McCoy*, this Court concluded "a driver's decision to agree to take a test is not coerced simply because an administrative penalty has been attached to refusing the test." 2014 ND 119, ¶ 21, 848 N.W.2d 659. In *State v. Smith*, we concluded the increased penalties under the State's implied consent law that went into effect in 2013, making refusal to take a test a crime, did not change our coercion analysis from *McCoy*. 2014 ND 152, ¶¶ 9, 16, 849 N.W.2d 599. Our analysis in *Smith* and *Birchfield* considers the same challenges Beylund brings under both the state and federal constitutions. Because Beylund alleges no other coercive circumstances, other than the penalties under N.D.C.C. ch. 39–20, we conclude he voluntarily consented to the blood test.

## V

[¶ 16] Beylund also argues North Dakota's implied consent law violates the unconstitutional conditions doctrine because it conditions the privilege of driving on the relinquishment of the constitutional right to be free of unreasonable searches and seizures. This Court has not previously addressed Beylund's argument on the "unconstitutional conditions doctrine." *See Herrman*, 2014 ND 129, ¶ 12, 847 N.W.2d 768 (declining to address unconstitutional conditions argument); *McCoy*, 2014 ND 119, ¶ 28, 848 N.W.2d 659 (declining to address unconstitutional conditions argument).

[¶ 17] In *Birchfield*, we explained our standard of review in the context of a constitutional challenge to the State's implied consent law:

Our standard for reviewing constitutional challenges to legislative enactments is well-established:

The determination whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. Any doubt about a statute's constitutionality must, when possible, be resolved in favor of its validity. The power to declare a legislative act unconstitutional is one of the highest functions of the courts, and that power must be exercised with great restraint. The presumption of constitutionality is so strong that a statute will not be declared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt. The party challenging the constitutionality of a statute has the burden of proving its constitutional infirmity.

*Simons v. State*, 2011 ND 190, ¶ 23, 803 N.W.2d 587 (internal citations omitted).

Driving is a privilege, not a constitutional right and is subject to reasonable control by the State under its police power. *See, e.g., State v. Smith*, 2014 ND 152, ¶ 8, 849 N.W.2d 599; *McCoy v. North Dakota Dep't of Transp.*, 2014 ND 119, ¶ 26, 848 N.W.2d 659. Under N.D.C.C. § 39–20–01(1), an individual who drives "is deemed to have given

consent, and shall consent, subject to the provisions of this chapter, to a chemical test. . . ." A chemical test may be administered "only after placing the individual . . . under arrest." N.D.C.C. § 39–20–01(2). However, a driver has a right to refuse a chemical test under N.D.C.C. § 39–20–04(1), which provides, "If a person refuses to submit to testing under section 39–20–01 . . ., none may be given." *See State v. Fetch,* 2014 ND 195, ¶ 8, 855 N.W.2d 389.

The criminal refusal provision is contained in N.D.C.C. § 39–08–01, which provides in relevant part:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

. . . .

e. That individual refuses to submit to any of the following:

. . . .

(2) A chemical test, or tests, of the individual's blood, breath, or urine to determine the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine, at the direction of a law enforcement officer under section 39–20–01; . . .

. . . . .

2. An individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state who refuses to submit to a chemical test, or tests, required under section . . . 39–20–01 . . . is guilty of an offense under this section.

Section 39–20–01, N.D.C.C., sets forth the implied consent requirements for motor vehicle drivers in general and in subsection 3 states that the "law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs" and "that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence."

The Fourth Amendment and N.D. Const. art. I, § 8, prohibit unreasonable searches and seizures, and the administration of chemical tests to determine alcohol concentration is a search for purposes of these constitutional provisions. *See Smith,* 2014 ND 152, ¶ 7, 849 N.W.2d 599; *McCoy,* 2014 ND 119, ¶ 10, 848 N.W.2d 659.

*Birchfield,* 2015 ND 6, ¶¶ 5–8, 858 N.W.2d 302. The United States Supreme Court has not decided, and it is a question of first impression, whether North Dakota's implied consent law represents an unconstitutional condition.

 [¶ 18] Because we have not previously addressed the "doctrine of unconstitutional conditions," some background is helpful. Generally speaking, the doctrine provides the government ordinarily may not grant a benefit conditioned on the surrender of a constitutional right, even if the government may withhold the benefit altogether. 16A Am. Jur. 2d *Const. Law* § 411 (2009 & Supp. 2014). However, under the doctrine, the government may lawfully impose conditions, including the surrender of a constitutional right, provided the conditions are reasonable. *Id.* Therefore, even if the unconstitutional conditions doctrine applies to the Fourth Amendment, it does not necessarily mean a constitutional violation occurred.

[¶ 19] Beylund relies on *Frost v. Railroad Comm'n of State of Cal.*, which provides that a State, when granting privileges, "may not impose conditions which require the relinquishment of constitutional rights." 271 U.S. 583, 594, 46 S.Ct. 605, 70 L.Ed. 1101 (1926). The *Frost* case involved regulation of private carriers and common carriers on the highways, and the constitutional challenge was that the legislation deprived private carriers of their property without due process of law, and denied them equal protection in violation of the Fourteenth Amendment of the federal constitution. *Id.* at 589, 46 S.Ct. 605.

[¶ 20] As a preliminary matter, Beylund cites no authority that clearly supports his contention that the unconstitutional conditions doctrine applies to a constitutional challenge based on the Fourth Amendment. This Court has never applied the unconstitutional conditions doctrine in the context of the Fourth Amendment. Further, we are unaware of any instance where the Supreme Court has applied the unconstitutional conditions doctrine to the Fourth Amendment. *See Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 724–25 (Minn.Ct.App.2014). In *United States v. Knights*, the United States Supreme Court mentioned, but did not apply the unconstitutional conditions doctrine, when it concluded warrantless searches of a home, as a condition of probation, were reasonable. 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Rather, the Supreme Court determined the issue by applying the general Fourth Amendment approach of examining the totality of the circumstances. *Id.* However, the absence of a decision by the Supreme Court or this Court is not conclusive.

[¶ 21] Beylund cites to various cases, unrelated to the unconstitutional conditions doctrine, that support the premise that the Fourth Amendment generally protects a person's right to be free of warrantless searches, under various circumstances. *See District of Columbia v. Little*, 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950); *Camara*, 387 U.S. 523, 87 S.Ct. 1727 (1967); *United States v. Prescott*, 581 F.2d 1343 (9th Cir.1978). Additionally, Beylund cites to cases, unrelated to the Fourth Amendment, involving the unconstitutional conditions doctrine. *See Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004); *Hillcrest Prop., LLP v. Pasco Cnty.*, 939 F.Supp.2d 1240 (M.D.Fla.2013). Beylund contends *Dearmore v. City of Garland* applies the unconstitutional conditions doctrine to the Fourth Amendment. 400 F.Supp.2d 894 (N.D.Tex.2005). In this case, a Texas federal district court enjoined the enforcement of an ordinance that required an individual renting property to allow the city to inspect the property, as a condition of receiving a rental permit. *Id.* at 906. The trial court, in *Dearmore*, while not mentioning the unconstitutional conditions doctrine, imposed an injunction on Fourth Amendment principles regarding the voluntariness of consent, determining only that the ordinance was "likely to be held unconstitutional." *Id.* at 903–04. Beylund also contends *Lebron v. Sec'y of Florida Dep't of Children and Families*, 772 F.3d 1352 (11th Cir.2014), applied the unconstitutional conditions doctrine to the Fourth Amendment. In *Lebron*, a requirement that all TANF applicants submit to suspicionless drug testing as a condition of receiving benefits was struck down. *Id.* at 1378. However, the case was not decided under the unconstitutional conditions doctrine, rather the case was decided using a "special needs" analysis generally applied to suspicionless searches. *Id.* We are not persuaded.

[¶ 22] Instead, we find instructive *Stevens*, 850 N.W.2d at 722–31 (refusing to apply unconstitutional conditions doctrine

412

to a Fourth Amendment challenge of Minnesota's implied consent statutes) and *State v. Chasingbear*, No. A14–0301, 2014 WL 3802616, at *3–8 (Minn.Ct.App. Aug. 4, 2014) (holding lower court erred as a matter of law by applying unconstitutional conditions doctrine to Minnesota's implied consent laws) (on appeal to the Minnesota Supreme Court at the time of this decision). *Stevens* and *Chasingbear* relied on *State v. Netland*, 762 N.W.2d 202 (Minn. 2009), *abrogated in part by State v. Brooks*, 838 N.W.2d 563 (Minn.2013), in analyzing whether the unconstitutional conditions doctrine should apply. In *Netland*, the Minnesota Supreme Court indicated the unconstitutional conditions "doctrine is properly raised only when a party has successfully pleaded the merits of the underlying unconstitutional government infringement." *Netland*, at 211. In other words, in order to proceed with a claim of unconstitutional conditions, the defendant must show the criminal refusal statute authorizes an unconstitutional search. *Id.* at 212. While we may not agree entirely with the analysis in *Stevens* and *Chasingbear*, we agree that to prevail Beylund must show the statutes criminalizing refusal authorize an unconstitutional search.

[¶ 23] As the United States Supreme Court stated in *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), "[t]he touchstone of the Fourth Amendment is reasonableness." In *Birchfield*, we explained the considerations in determining reasonableness in the context of the implied consent law:

> [Reasonableness] [ ] is assessed by balancing the promotion of legitimate governmental interests with the intrusion on an individual's privacy. *State v. Adams*, 2010 ND 184, ¶ 15, 788 N.W.2d 619. There is no question "the State's interest in decreasing drunk driving is a valid public concern. Indeed, '[n]o one can seriously dispute the magnitude of

the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion." *Martin v. North Dakota Dep't of Transp.*, 2009 ND 181, ¶ 7, 773 N.W.2d 190 (quoting *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990)). A licensed driver has a diminished expectation of privacy with respect to enforcement of drunk-driving laws because he or she is presumed to know the laws governing the operation of a motor vehicle, and the implied consent laws contain safeguards to prohibit suspicionless requests by law enforcement officers to submit to a chemical test. *See, e.g.*, *[State v.] Yong Shik Won* [134 Hawai'i 59], 332 P.3d [661,] 681 [Haw.Ct.App. 2014]; *Stevens v. Commissioner of Pub. Safety*, 850 N.W.2d 717, 728–29 (Minn. Ct.App.2014); *[United States v.] Muir*, 2014 WL 4258701 at *6 [ (D.Ct.Md., Aug. 28, 2014) ].

2015 ND 6, ¶ 17, 858 N.W.2d 302.

[¶ 24] Beylund has not pointed out any statute under North Dakota's implied consent laws that requires him to submit to a blood test contrary to the Fourth Amendment, in other words, an unreasonable search without a warrant or an exception to the warrant requirement. Under the facts of this case, Beylund consented to the test, and consent is an exception to the warrant requirement. *City of Fargo v. Wonder*, 2002 ND 142, ¶ 20, 651 N.W.2d 665 (stating "[c]onsent is a recognized exception to the warrant requirement"). Second, if Beylund had refused the test, no search would have occurred. Law enforcement is not authorized to force a test as N.D.C.C. § 39–20–04(1) specifically provides if a test is refused, "none may be given."

[¶ 25] Assuming Beylund has a constitutional right to refuse, it does not necessarily invalidate the implied consent law under the unconstitutional conditions doctrine. *See Chasingbear*, 2014 WL 3802616, at *6 (citing *Frost*, 271 U.S. at 591, 46 S.Ct. 605). "The unconstitutional conditions doctrine looks to the purpose of the challenged condition, and it invalidates only those laws whose challenged condition bears no significant relevance to the governmental objective of the privilege that the government is conditionally conferring." *Chasingbear*, 2014 WL 3802616, at *6. The record does not reflect any analysis of the purpose of the implied consent laws. However, it is not difficult to ascertain. The Supreme Court has repeatedly recognized the States' interest in public safety in removing drunken drivers from their highways. *See Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (recognizing that the interest in public safety is substantially served by summary suspension of driver's license by those who refuse to be tested upon arrest). As noted in *Mackey*, the sanction for refusal serves multiple purposes: 1) to serve as a deterrent to drunken driving; 2) as a strong inducement to take the test; and 3) to promptly remove drunk drivers from the road, which contributes to public safety. *Id.* at 18, 99 S.Ct. 2612.

[¶ 26] In *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the Supreme Court held a highway sobriety checkpoint did not violate the Fourth Amendment, despite the fact that a seizure of the vehicle occurred without reasonable suspicion for the stop. As noted in *Sitz*, "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Id.* at 451, 110 S.Ct. 2481. In *Sitz*, the Court balanced the State's interests in preventing drunken driving against the intrusion upon individual motorists, and held the field sobriety checkpoints were consistent with the Fourth Amendment. *Id.* at 455, 110 S.Ct. 2481.

[¶ 27] In *Missouri v. McNeely*, ––– U.S. –––, 133 S.Ct. 1552, 1565, 185 L.Ed.2d 696 (2013) (plurality decision), the Supreme Court reiterated drunk driving continues to be a significant problem. In *McNeely*, the Supreme Court rejected the notion that the natural dissipation of alcohol in the bloodstream established a per se exigency that would justify an exception to the warrant requirement. *Id.* at 1563. However, the Court noted:

> States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.... Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.... *see also South Dakota v. Neville*, 459 U.S. 553, 554, 563–564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination).

*Id.* at 1566. It is clear that the State has a compelling state interest in regulating intoxicated drivers. The next step of the analysis is to determine whether the State's interest in regulating intoxicated

drivers is related to the privilege of driving in such a way that the implied consent statutes are reasonable.

[¶ 28] North Dakota's implied consent laws, like Minnesota's, "confers on drivers the privilege of *soberly* operating inherently dangerous motorized vehicles on the state's roadways ... and, in exchange, each driver accepts a statutory choice." *Chasingbear*, 2014 WL 3802616, at *7. The choice is to consent to testing or face civil and criminal penalties equivalent or possibly less than those if convicted of driving under the influence. *See Birchfield*, 2015 ND 6, ¶ 17, 858 N.W.2d 302 (noting that driver may avoid enhanced penalties for being highly intoxicated by refusing chemical testing).

[¶ 29] As noted in *Birchfield*, a licensed driver has a diminished expectation of privacy with respect to the enforcement of drunk-driving laws, and our implied consent laws contain safeguards to prohibit suspicionless requests by law enforcement to submit to a chemical test. *Id.* at ¶ 17.

[¶ 30] As we have explained in cases challenging the constitutionality of a statute:

An Act of the legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity. A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution. The justice, wisdom, necessity, utility and expediency of legislation are questions for the legislative, and not for judicial determination.

*McCoy*, 2014 ND 119, ¶ 27, 848 N.W.2d 659. As a result, the burden for overturning a statute is high, and we are not convinced the implied consent law is invalid under the unconstitutional conditions

doctrine. Accordingly, Beylund's unconstitutional conditions argument fails, and we affirm the district court.

VI

[¶ 31] We conclude Beylund voluntarily consented to the chemical blood test. We further conclude North Dakota's implied consent law as challenged, either on its face or as applied, does not violate the Fourth Amendment of the United States Constitution applying either general Fourth Amendment principles or under the doctrine of unconstitutional conditions. Finally, we decline to address the arguments Beylund failed to include in his notice of appeal and specifications of error. The judgment is affirmed.

[¶ 32] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.