2015 ND 107

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Kyle Lynn BAXTER, Defendant and Appellant.**

No. 20140325.

Supreme Court of North Dakota.

April 28, 2015.

Rehearing Denied May 27, 2015.

Thomas A. Gehrz, Dickinson, N.D., for plaintiff and appellee.

Thomas F. Murtha IV, Dickinson, N.D., for defendant and appellant.

McEVERS, Justice.

[¶1] Kyle Lynn Baxter appeals from a criminal judgment entered on a conditional plea of guilty to refusal to submit to an onsite screening or chemical test. Because we conclude the criminal refusal statutes do not violate Baxter's rights under the Fourth Amendment and N.D. Const. art. I, § 8, the unconstitutional conditions doctrine, or the due process clause, we affirm.

I

[¶2] On November 21, 2013, a Stark County deputy sheriff pulled over Baxter's vehicle in Dickinson after observing the vehicle with frost on the windshield weaving, being driven in the opposite lane of traffic, and almost hitting the curb. The deputy noticed a very strong odor of alcohol on Baxter and that he was lethargic and slow to respond to questions. After Baxter failed a field sobriety test, the HGN test in which he "[s]cored six out of the possible six clues," the officer read him the implied consent advisory and asked him to take an onsite screening test with an Intoximeter. Baxter refused. The deputy placed Baxter under arrest, took him to the law enforcement center, again read him the advisory, and asked him to take a chemical test. Baxter again refused.

[¶3] Baxter was charged with refusing to submit to an onsite screening or chemical test in violation of N.D.C.C. § 39–08–01(1)(e). Baxter moved to suppress evidence, arguing the criminal refusal statutes violate his rights under the State and Federal Constitutions. The district court rejected Baxter's arguments and denied the motion. Baxter conditionally pled guilty under N.D.R.Crim.P. 11(a)(2), reserving the right to appeal the court's order denying his motion to suppress.

II

[¶4] Baxter argues the criminal refusal statutes violate his rights under the Fourth Amendment and its state counterpart, the unconstitutional conditions doctrine, and the due process clause.

[¶5] In *Beylund v. Levi*, 2015 ND 18, ¶17, 859 N.W.2d 403, we explained:

> The determination whether a statute is unconstitutional is a question of law, which is fully reviewable on appeal. All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. Any doubt about a statute's constitutionality must, when possible, be resolved in favor of its validity. The power to declare a legislative act unconstitutional is one of the highest functions of the courts, and that power must be exercised with great restraint. The presumption of constitutionality is so strong that a statute will not be de-

clared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt. The party challenging the constitutionality of a statute has the burden of proving its constitutional infirmity.

(quoting *State v. Birchfield*, 2015 ND 6, ¶ 5, 858 N.W.2d 302).

## A

[¶ 6] In *Birchfield*, 2015 ND 6, ¶ 19, 858 N.W.2d 302, we held the criminal refusal statutes are not unconstitutional under the Fourth Amendment or N.D. Const. art. I, § 8. In *Beylund*, 2015 ND 18, ¶¶ 30–31, 859 N.W.2d 403, we held the implied consent law does not violate the doctrine of unconstitutional conditions. Those cases dealt with the criminal refusal provision relating to chemical tests, N.D.C.C. § 39–08–01(e)(2), which may be administered "only after placing the individual ... under arrest." N.D.C.C. § 39–20–01(2). *See Birchfield*, at ¶ 7; *Beylund*, at ¶ 17. Baxter refused both the onsite screening test and the chemical test, and the criminal judgment indicates he conditionally pled guilty to "Refusal to Submit to an On Sight Screening or Chemical Test in violation of N.D.C.C. § 39–08–01(e)(3)."

[¶ 7] The refusal to submit to an onsite screening test is criminalized under N.D.C.C. § 39–08–01:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

. . . .

e. That individual refuses to submit to any of the following:

. . . .

(3) An onsite screening test, or tests, of the individual's breath for the purpose of estimating the alcohol concentration in the individual's breath upon the request of a law enforcement officer under section 39–20–14.

. . . .

2. An individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state who refuses to submit to a chemical test, or tests, required under section 39–06.2–10.2, 39–20–01, or 39–20–14, is guilty of an offense under this section.

[¶ 8] Section 39–20–14(1), N.D.C.C., provides when a law enforcement officer may request an onsite screening test:

Any individual who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the individual's breath for the purpose of estimating the alcohol concentration in the individual's breath upon the request of *a law enforcement officer who has reason to believe that the individual committed a moving traffic violation or* was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, *through the officer's observations, formulated an opinion that the individual's body contains alcohol.*

(Emphasis added). Section 39–20–04(1), N.D.C.C., provides that "[i]f a person refuses to submit to testing under section ... 39–20–14, none may be given. ..." The results of a "screening test must be used only for determining whether or not a further test shall be given under the provisions of section 39–20–01." N.D.C.C. § 39–20–14(3).

[¶ 9] When law enforcement has reason to believe a moving violation has occurred,

along with information to form an opinion that the driver's body contains alcohol, the officer has a reasonable and articulable suspicion the person was driving under the influence of alcohol sufficient to request an onsite screening test as provided in N.D.C.C. § 39–20–04(1). This accords with the view held by the vast majority of courts that field sobriety testing may be requested on the basis of reasonable, articulable suspicion of driver intoxication. *See, e.g., State v. Royer,* 276 Neb. 173, 753 N.W.2d 333, 341 (2008), and cases collected therein; *State v. Bernokeits,* 423 N.J.Super. 365, 32 A.3d 1152, 1157–58 (App.Div. 2011), and cases collected therein; *State v. Candace S.,* 274 P.3d 774, 778 (N.M.Ct. App.2011). However, this Court has declined to decide whether probable cause to arrest for driving under the influence is constitutionally necessary before an onsite screening test may be requested, because probable cause to arrest existed in each of the cases. *See Mayo v. Moore,* 527 N.W.2d 257, 259 (N.D.1995); *State v. Goeman,* 431 N.W.2d 290, 291 n. 1 (N.D.1988); *State v. Pitman,* 427 N.W.2d 337, 343–44 (N.D.1988). Nevertheless, we have explained the role of the N.D.C.C. § 39–20–14 onsite screening test:

> Similar in purpose to the various field sobriety tests, *the purpose of an on-site chemical screening test is to insure that sufficient probable cause exists to warrant an arrest.* The arresting officer, in light of the information already available to him, bent over backwards to insure that he had sufficient probable cause to place Asbridge under arrest, and we fail to see how Asbridge was prejudiced by the administration of the test. Had he passed the screening test, he would have been spared the onerous burden and inconvenience of having to decide whether or not to submit to further chemical testing.

*Fossum v. North Dakota Dep't of Transp.,* 2014 ND 47, ¶ 16, 843 N.W.2d 282 (quoting *Asbridge v. North Dakota State Highway Comm'r,* 291 N.W.2d 739, 745 (N.D.1980)).

[¶ 10] Other courts have considered whether probable cause is constitutionally necessary to support a request for a preliminary breath test ("PBT"). In *State v. McGuigan,* 184 Vt. 441, 965 A.2d 511, 516–17 (2008), the Vermont Supreme Court relied on the balancing test in *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), finding "the level of intrusion occasioned by the administration of the tests was 'outweighed by the strong law enforcement interest in attempting to keep a suspected drunk driver off the roads,'" and concluded:

> PBTs are common tools in the investigatory kit officers use to ascertain whether probable cause exists to believe that an individual has been driving under the influence of alcohol. PBTs are "quick and minimally intrusive" yet "perform[ ] a valuable function as a screening device" to detect drunk driving. *State v. Orvis,* 143 Vt. 388, 391, 465 A.2d 1361, 1362 (1983). This investigative step is completed quickly. The relatively limited intrusion into a suspect's privacy is outweighed by the important public-safety need to identify and remove drunk drivers from the roads. See *State v. Martin,* 145 Vt. 562, 568, 496 A.2d 442, 447 (1985) (citing *South Dakota v. Neville,* 459 U.S. 553, 558, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (noting the "serious threat posed to public safety" by drunk drivers on public highways)). We thus find it reasonable, under both the Fourth Amendment and Article 11, for an officer to administer a PBT to a suspect if she can point to specific, articulable facts indicating that an individual has been driving under the influence of alcohol.

(footnote omitted, internal citation omitted). Courts in general have held "submit[ting] to a preliminary test of his or her breath for alcohol concentration is not unconstitutional because it does not require probable cause to administer the preliminary breath test." 61A C.J.S. *Motor Vehicles* § 1593 (2012) (footnote omitted); *see also State v. Prescott,* 280 Neb. 96, 784 N.W.2d 873, 885–86 (2010) (adopting *McGuigan* reasoning); *People v. Rozela,* 345 Ill.App.3d 217, 280 Ill.Dec. 447, 802 N.E.2d 372, 379 (2003); *State v. Whitney,* 889 N.E.2d 823, 829 (Ind.Ct.App.2008). We agree that probable cause is not required before an onsite screening test may be offered by a law enforcement officer. To eliminate any confusion, and because we construe statutes to avoid constitutional infirmities, *see, e.g., City of Fargo v. Salsman,* 2009 ND 15, ¶ 21, 760 N.W.2d 123, we interpret N.D.C.C. § 39–20–14(1) to require reasonable suspicion of driving under the influence of alcohol before a law enforcement officer may request a driver to submit to an onsite screening test.

[¶ 11] Here, the record clearly establishes that the deputy had reasonable suspicion, if not probable cause, to believe Baxter was driving under the influence of alcohol. Because a limited *Terry* search based on reasonable suspicion is constitutionally permissible, *see, e.g., State v. Parizek,* 2004 ND 78, ¶ 17, 678 N.W.2d 154, the deputy's request that Baxter submit to an onsite screening test did not run afoul of the Fourth Amendment. Baxter was not forced to submit to the onsite screening test. Rather, he took advantage of the statutory right to refuse the test, and no test was given. As in *Beylund,* 2015 ND 18, ¶ 24, 859 N.W.2d 403, and in *Birchfield,* 2015 ND 6, ¶ 15, 858 N.W.2d 302, Baxter points to nothing in the implied consent laws that would require him to submit to an onsite screening test in violation of the Fourth Amendment. Furthermore, the same reasonableness analysis we employed in *Beylund,* at ¶¶ 23–29, and *Birchfield,* at ¶ 5, is equally applicable to criminalizing the refusal to submit to an onsite screening test.

[¶ 12] Based on our holdings in *Birchfield* and *Beylund,* we conclude Baxter's rights under the Fourth Amendment and N.D. Const. art. I, § 8, and the unconstitutional conditions doctrine, were not violated in this case.

B

[¶ 13] Baxter argues the criminal refusal statutes violate his due process rights.

[¶ 14] In *Hoff v. Berg,* 1999 ND 115, ¶¶ 13–14, 595 N.W.2d 285, this Court explained the levels of scrutiny employed in analyzing due process claims:

Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. Therefore, state limitations on a fundamental right such as the right of privacy are permissible only if they survive strict constitutional scrutiny. However, where fundamental rights or interests are not implicated or infringed, state statutes are reviewed under the rational basis test.... Under rational basis review, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute."

(Citations omitted.) *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir.1997).

Substantive due process analysis requires a close correspondence between

legislation and the goals it advances. *See Law v. Maercklein,* 292 N.W.2d 86, 91 (N.D.1980). This Court may declare a statute unconstitutional on substantive due process grounds if " 'the Legislature had no power to act in the particular matter or, having power to act, [ ] such power was exercised in an arbitrary, unreasonable, or discriminatory manner and [ ] the method adopted has no reasonable relation to attaining the desired result.' " *Fargo v. Stensland,* 492 N.W.2d 591, 594 (N.D.1992) quoting *Menz v. Coyle,* 117 N.W.2d 290, 299 (N.D.1962).

[¶ 15] "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nations' history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " *Abdullah v. State,* 2009 ND 148, ¶ 27, 771 N.W.2d 246 (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). Baxter cites no authority holding refusal of an onsite screening or chemical test implicates a fundamental right. Baxter appears to argue that under the United States Supreme Court's decision in *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), he has a constitutional substantive due process right to refuse testing without facing prosecution for the refusal. But the plurality in *McNeely* made it clear that "[i]n petitioning for certiorari to this Court, the State challenged only the first holding" of the Missouri Supreme Court "that the dissipation of alcohol did not establish a *per se* exigency." *Id.* at 1567–68; *see also id.* at 1569 (Kennedy, J., concurring in part) ("[T]he instant case . . . does not provide a framework where it is prudent to hold any more than that always dispensing with a warrant for a blood test when a driver is arrested for being under the influence of alcohol is inconsistent with the Fourth Amendment."); *id.* at 1574 (Roberts, C.J., concurring in part and dissenting in part) ("The question presented is whether a warrantless blood draw is permissible under the Fourth Amendment 'based upon the natural dissipation of alcohol in the bloodstream.' "); *id.* (Thomas, J., dissenting) ("This case requires the Court to decide whether the Fourth Amendment prohibits an officer from obtaining a blood sample without a warrant when there is probable cause to believe that a suspect has been driving under the influence of alcohol."). The separate opinions in *McNeely* contain no discussion of substantive due process rights.

[¶ 16] But even if the right of refusal implicates a fundamental right, we have recently held "[i]t is clear that the State has a compelling state interest in regulating intoxicated drivers," *Beylund,* 2015 ND 18, ¶ 27, 859 N.W.2d 403, and the often-stated reasons for this conclusion need not be restated here. *See, e.g., id.* at ¶¶ 25–27; *Birchfield,* 2015 ND 6, ¶ 17, 858 N.W.2d 302; *State v. Smith,* 2014 ND 152, ¶ 8, 849 N.W.2d 599; *McCoy v. North Dakota Dep't of Transp.,* 2014 ND 119, ¶ 26, 848 N.W.2d 659. We further believe the criminal refusal statutes are narrowly drawn to express only the legitimate state interests at stake. As we explained in *Beylund,* at ¶¶ 28–29:

North Dakota's implied consent laws, like Minnesota's, "confers on drivers the privilege of *soberly* operating inherently dangerous motorized vehicles on the state's roadways . . . and, in exchange, each driver accepts a statutory choice." [*State v.*] *Chasingbear,* 2014 WL 3802616, at *7 [ (2014) ]. The choice is to consent to testing or face civil and criminal penalties equivalent or possibly less

than those if convicted of driving under the influence. *See Birchfield*, 2015 ND 6, ¶ 17, 858 N.W.2d 302 (noting that driver may avoid enhanced penalties for being highly intoxicated by refusing chemical testing).

As noted in *Birchfield*, a licensed driver has a diminished expectation of privacy with respect to the enforcement of drunk-driving laws, and our implied consent laws contain safeguards to prohibit suspicionless requests by law enforcement to submit to a chemical test. *Id.* at ¶ 17.

[¶ 17]   The criminal refusal statutes are narrowly drawn to further the state's compelling interest in combating drunk driving, and pass any level of scrutiny under the due process clause. We conclude Baxter's due process rights were not violated in this case.

### III

[¶ 18]   We need not address other arguments raised because they either are unnecessary to the decision or are without merit. The criminal judgment is affirmed.

[¶ 19]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.