2016 ND 77

**Andrew John GILLMORE, Petitioner and Appellant**

v.

**Grant LEVI, Director of the North Dakota Department of Transportation, Respondent and Appellee**

No. 20150321.

Supreme Court of North Dakota.

April 12, 2016.

Thomas F. Murtha IV, Dickinson, N.D., for petitioner and appellant.

Michael T. Pitcher, Office of the Attorney General, Bismarck, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Andrew Gillmore appeals from a judgment affirming the Department of Transportation's decision to suspend his driving privileges for 91 days. Because we conclude the Department's decision is in accordance with the law, its findings of fact are supported by a preponderance of the evidence and support the conclusions of law, and Gillmore's constitutional rights were not violated, we affirm the judgment.

I

[¶ 2] On February 14, 2015, Gillmore was stopped by a Dickinson police officer after the officer observed him failing to use a turn signal and "fishtail[ing]" around a corner. The officer noticed Gillmore's eyes were watery and detected a strong odor of cigars coming from Gillmore's vehicle, and he asked Gillmore to sit in the patrol vehicle. While in the patrol vehicle, the officer smelled the odor of alcohol, and Gillmore admitted drinking alcohol. After failing some field sobriety tests, Gillmore was read the implied consent advisory and agreed to take an alcohol screening test. Gillmore attempted to blow into the machine five times but was unable to register a result. The officer placed Gillmore under arrest for refusal to submit to the onsite screening test and for driving under the influence of alcohol and drove him to the law enforcement center. Gillmore agreed to submit to a chemical test at the law enforcement center, and while administering the test, the officer told him "to blow as hard as he can." The test showed an alcohol concentration of .082 percent by weight, above the presumptive limit.

[¶ 3] Gillmore requested an administrative hearing to contest the Department's intention to suspend his driving privileges for having a blood alcohol content above the presumptive limit of .08 percent under N.D.C.C. § 39–08–01(1)(a). Following a hearing during which the arresting officer and Gillmore testified, the Department's hearing officer suspended Gillmore's driving privileges for 91 days. The Department denied Gillmore's petition for reconsideration. The district court affirmed the Department's decision.

[¶ 4] The Department had jurisdiction under N.D.C.C. § 39–20–05. Gillmore's appeal to the district court was timely under N.D.C.C. § 28–32–42(1). The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 39–20–06. Gillmore's appeal to this Court was timely under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

II

[¶ 5] Gillmore raises numerous arguments challenging the Department's suspension of his driving privileges.

[¶ 6] We review an administrative suspension of driving privileges under N.D.C.C. § 28–32–46, which for purposes of this appeal requires that we affirm the Department's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.

. . . .

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.

[¶ 7] In *Deeth v. Dir., N.D. Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86, we explained:

It is well established that we must afford "great deference" to the factual determinations made by an agency when reviewing the agency's findings of fact. *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 6, 851 N.W.2d 172 (citing *Wampler v. N.D. Dep't of Transp.*, 2014 ND 24, ¶ 6, 842 N.W.2d 877). Rather than making independent findings of fact, or substituting our judgment for that of the agency, our review is confined to determining whether " 'a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " *Vanlishout [v. N.D. Dep't of Transp.*, 2011 ND 138, ¶ 12, 799 N.W.2d 397] (quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)). Although this Court's review is limited to the record before the administrative agency, "the district court's analysis is entitled to respect if its reasoning is sound." *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73. "An agency's conclusions on questions of law are subject to full review." *Vanlishout*, at ¶ 12 (citing *Huff v. Bd. of Med. Examiners*, 2004 ND 225, ¶ 8, 690 N.W.2d 221).

## A

[¶ 8] Gillmore argues he did not voluntarily submit to the field sobriety tests administered by the arresting officer and the hearing officer erred in failing to make findings on this issue.

[¶ 9] The officer had reasonable grounds to believe Gillmore was under the influence of alcohol because he smelled the odor of alcohol on Gillmore and noticed his watery eyes, and Gillmore admitted to the officer that he had been drinking alcohol. The hearing officer specifically found the arresting officer "had reasonable grounds to believe Mr. Gillmore had been driving a vehicle while under the influence of intoxicating liquor." Gillmore points to no evidence in the record suggesting his consent to the field sobriety tests was involuntary. Indeed, during the hearing, Gillmore testified he complied with the officer's requests to perform field sobriety tests because "I didn't feel like I was at all doing wrong, so I just wanted to do anything he asked of me at that point in time." Whether a driver voluntarily consented to field sobriety testing was not listed as an issue for consideration by the hearing officer under the effective version of N.D.C.C. § 39–20–05(2) (2013) when Gillmore was arrested.

[¶ 10] We conclude Gillmore's argument is without merit.

## B

[¶ 11] Gillmore argues the officer did not read him the implied consent advisory after his arrest in violation of N.D.C.C. § 39–20–01(3) (2013) and the officer's failure to do so means he was not

tested in accordance with N.D.C.C. § 39–20–01.

■ [¶ 12] Gillmore's arrest occurred before the effective date of the 2015 legislation making inadmissible in any criminal or administrative proceeding chemical tests given to an arrested driver who has not been provided a complete chemical test implied consent advisory. See N.D.C.C. § 39–20–01(3)(b) (2015); State v. O'Connor, 2016 ND 72, ¶ 14, 877 N.W.2d 312. Here the report and notice form states Gillmore "[w]as advised by law enforcement of the implied consent advisory contained on this form." "The Department's Report and Notice form is admissible as prima facie evidence of its contents once it is forwarded to the director of the Department." Dawson v. N.D. Dep't of Transp., 2013 ND 62, ¶ 23, 830 N.W.2d 221. Although the arresting officer did not recall whether he had readvised Gillmore before the chemical test was administered, Gillmore had the burden to rebut the prima facie evidence contained in the report and notice form. See Thorsrud v. Dir., N.D. Dep't of Transp., 2012 ND 136, ¶ 10, 819 N.W.2d 483. Gillmore did not testify the officer failed to read this advisory after his arrest, and therefore he failed to rebut the officer's giving him the proper advisory. Moreover, under the law in effect at the time of Gillmore's arrest, a single recitation of the implied consent advisory could suffice as compliance with the statutory requirements. See State v. Salter, 2008 ND 230, ¶ 10, 758 N.W.2d 702, abrogated by statute as stated in O'Connor, at ¶ 11. Finally, at the time of Gillmore's arrest, N.D.C.C. § 39–20–05(2) (2013) specifically provided that "[w]hether the individual was informed that the privilege to drive might be suspended based on the results of the test is not an issue" at the administrative hearing. See also Gardner v. N.D.

Dep't of Transp., 2012 ND 223, ¶¶ 9–14, 822 N.W.2d 55.

C

■ [¶ 13] Gillmore argues the implied consent advisory read to him by the officer is "misleading" because the officer "incorrectly advised him that North Dakota law requires him to submit to testing when in fact Mr. Gillmore had a statutory right to refuse to submit to a chemical test."

[¶ 14] Section 39–20–01(3), N.D.C.C. (2013), provided during the relevant time:

The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.

[¶ 15] There is nothing "misleading" about this advisory. The advisory provides that state law requires an individual to take the test, but it also provides the consequences for refusing to do so. A reasonable person would be well aware of his right to refuse the test by being advised of the consequences for refusal. We have held consent to a chemical test is not coerced or rendered involuntary by a law enforcement officer's reading of this implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice. See, e.g., McCoy v. N.D. Dep't of Transp., 2014 ND 119, ¶ 21, 848 N.W.2d 659.

[¶ 16] We conclude the advisory is not "misleading."

### D

[¶ 17] Gillmore argues he was not tested according to the approved method, because the arresting officer told him to "blow as hard as he could" into the Intoxilyzer 8000 and therefore the hearing officer erred in admitting the chemical test result.

[¶ 18] Under N.D.C.C. § 39–20–07(5) (2013), the results of a chemical test must be received in evidence if the test is performed according to methods approved by the director of the state crime laboratory or the director's designee. *See Keller v. N.D. Dep't of Transp.*, 2015 ND 81, ¶ 6, 861 N.W.2d 768. Because the approved method does not specifically state that the person taking the test should be instructed "to blow as hard as they can," Gillmore argues the test is invalid.

[¶ 19] We agree with the district court's reasons for rejecting this argument:

In this case, the police officer signed the Intoxilyzer Test Record and Checklist under the following statement: "I followed the Approved Method and the instructions displayed by the Intoxilyzer in conducting this test." Although the Approved Method does not specify that the operator should instruct the subject to blow as hard as he can, doing so does not result in a deviation from the Approved Method. As previously noted, " 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Buchholtz [v. Dir., N.D. Dep't of Transp.]*, 2008 ND 53, ¶ 10, 746 N.W.2d 181. The Approved Method does not instruct the operator exactly what to say to the subject, word-for-word, in every situation. Instead, the Approved Method informs or reminds the operator of the basics of what they either need to ask or say to the subject. For example, the Approved Method tells the operator to ascertain whether the subject has anything in their mouth, without specifying whether or how the operator should phrase a question to the subject regarding this.

[¶ 20] Gillmore, after five attempts, had failed to provide a sufficient breath sample for the onsite screening test, which resulted in the officer's advising him to blow harder for the chemical test. The officer's instruction did not result in a flawed breath test. Gillmore's Intoxilyzer test showed two sufficient breath samples were obtained, and neither was deemed deficient. Gillmore has failed to show any deviation from the approved method.

[¶ 21] We conclude the hearing officer did not err in admitting the test result.

### E

[¶ 22] Gillmore argues the Department erred in suspending his driving privileges because his "test result was within the margin of error of the machine to be below .08."

[¶ 23] The relevant portion of N.D.C.C. § 39–20–05(2) (2013) provides the issue here is "whether *the test results* show the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight."

[¶ 24] During the administrative hearing, Gillmore argued the Intoxilyzer 8000 used to test his breath had a margin of error of .003. The first document in an exhibit he relied upon is the Ethanol Breath Standard Analytical Report, which states:

A proper result for the standard test using a cylinder of this lot number would be the range of 0.075 to 0.085 g ethanol/210 L of vapor (g/100 ml of blood or g/210 L of end expiratory breath).

Gillmore's attorney argued this establishes "that the gas standard error would then be .005." His attorney then asked the hearing officer "to take judicial notice[ ] that the deviation for that lot is .002 according to the records kept by the attorney general's office." The hearing officer said she would allow him to submit the document and include it in the record, and he said, "I'll actually email you the exhibit off the website." He then argued "the documentation from the attorney general's office it will demonstrate that the machine's margin of error is actually .003 and that this test result is within the margin of error," which could lower Gillmore's actual blood alcohol concentration to .079. Gillmore's attorney, however, did not supplement the record with the document from the attorney general's office, and the district court concluded "Gillmore did not establish the Intoxilyzer 8000 has a margin of error of .003."

[¶ 25] On appeal, Gillmore's attorney asserts he established a margin of error of .003 for the Intoxilyzer 8000 during the administrative hearing on the basis of another document contained in the same exhibit titled "Certificate of Analysis," which states: "Accuracy: +/− 0.002 or 2% BAC whichever is greater." In his brief, Gillmore's attorney combines the .002 figure from the Certificate of Analysis and the .005 figure arrived at under his interpretation of the Ethanol Breath Standard Analytical Report and concludes "the margin of error attributable to the Intoxilyzer 8000 is plus or minus .003."

[¶ 26] Expert testimony is admissible "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." N.D.R.Ev. 702. "The necessity for expert testimony is particularly so when such information is outside the common knowl-edge of laymen." *Winkjer v. Herr*, 277 N.W.2d 579, 588 (N.D.1979). Indeed, "if a party seeks to prove an issue that is beyond the ken of the [factfinder], that party *must* present expert testimony." Kaye, Bernstein and Mnookin, *The New Wigmore: Expert Evidence* § 2.5 (2nd ed.2010) (footnote omitted). Expert testimony is generally required to establish margins of error in chemical tests for alcohol. *See, e.g., People v. Ikerman*, 362 Ill. Dec. 612, 973 N.E.2d 1008, 1020 (Ill.Ct. App.2012); *Nicholson v. State*, 761 So.2d 924, 929 (Miss.Ct.App.2000); *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191, 196 (2000). Here, not only did Gillmore fail to present any margin of error expert testimony, he failed to present expert testimony that his test result should be adjusted downward rather than upward. *See, e.g., City of Hutchinson v. Minor*, 2003 WL 22831740, at *3 (Kan.Ct.App. Nov. 26, 2003); *Baue*, at 200, 207.

[¶ 27] The statement from the Ethanol Breath Standard Analytical Report relied upon by Gillmore is incomprehensible to a layperson. Even more incomprehensible to a layperson is Gillmore's attorney's unexplained combination of the Ethanol Breath Standard Analytical Report and the Certificate of Analysis statements to arrive at a claimed margin of error of .003. Although the arresting officer acknowl-edged the Intoxilyzer 8000 has a margin of error, Gillmore's attorney's attempted interpretation of these scientific documents did not establish the margin of error.

[¶ 28] We conclude Gillmore failed to establish any margin of error in the Intoxilyzer 8000 test result, and the Department did not err in suspending his driving privileges. Therefore, we need not address the State's alternative argument that the statutory scheme already recognizes the inherent margin of error in a chemical test device and the factfinder need not consider

the margin of error of a particular testing device. *See, e.g., Haynes v. State*, 865 P.2d 753, 755 (Alaska 1993) (discussing split of authority).

## F

[¶ 29] Gillmore claims his suspension violates various provisions of the federal and state constitutions. We have rejected all of his arguments in prior decisions.

[¶ 30] In *Olson v. Levi*, 2015 ND 250, ¶ 13, 870 N.W.2d 222, we held the implied consent laws do not violate N.D. Const. art. I, § 20, and summarized:

In *State v. Smith*, 2014 ND 152, ¶ 16, 849 N.W.2d 599 and *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 21, 848 N.W.2d 659, we held consent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice.... In *State v. Birchfield*, 2015 ND 6, ¶ 19, 858 N.W.2d 302, [*cert. granted*, —— U.S. ——, 136 S.Ct. 614, 193 L.Ed.2d 494 (2015),] we held the criminal refusal statute is not unconstitutional under the Fourth Amendment or N.D. Const. art. I, § 8. In *Beylund v. Levi*, 2015 ND 18, ¶¶ 30–31, 859 N.W.2d 403, [*cert. granted*, —— U.S. ——, 136 S.Ct. 614, 193 L.Ed.2d 495 (2015),] we held the implied consent law does not violate the doctrine of unconstitutional conditions. In *State v. Baxter*, 2015 ND 107, ¶¶ 13–17, 863 N.W.2d 208, we held the criminal refusal statutes do not violate a defendant's due process rights. Recently, in *State v. Kordonowy*, 2015 ND 197, ¶¶ 15–19, 867 N.W.2d 690, we held the criminal refusal statutes are not unconstitutionally vague.

*Id.* at ¶ 12. Gillmore has not convinced us to revisit these issues.

[¶ 31] We conclude Gillmore's constitutional rights were not violated.

## III

[¶ 32] It is unnecessary to address other arguments raised, because they are either unnecessary to the decision or are without merit. We conclude the Department's decision is in accordance with the law, its findings of fact are supported by a preponderance of the evidence and support the conclusions of law, and Gillmore's constitutional rights were not violated. The judgment is affirmed.

[¶ 33] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

LISA FAIR McEVERS, J., concurs in the result.